(Judge Hull of the sixth circuit sitting in place of Judge Burrows.)

### M. E. CH. AND SOCIETY V. ASHTABULA WATER CO.

**1. PRACTICAL CONSTRUCTION OF AMBIGUOUS CONTRACTS.**

Where the language of a contract is ambiguous, it is proper for the court to consider the interpretation and construction that the parties themselves have placed upon it, as evidenced by what they have said and what they have done.

**2. RULE AS TO CONSTRUING WHEN THE LANGUAGE IS CLEAR.**

Where the language of a contract is clear, courts will not endeavor to inject any ambiguity or to give it a far-fetched construction, but will place upon the contract the construction which the plain language used calls for, giving to each word its ordinary meaning.

**3. CONSTRUCTION OF STIPULATION FOR FREE WATER IN CHURCHES.**

Under a franchise granted to a waterworks company stipulating that grantee "shall furnish free of charge all the water needed for use in the churches," such company may be required to furnish free of charge the water necessary to operate a motor to furnish power to a pipe organ in the church, although at the time the franchise was granted such motors, while in use elsewhere, were not in use in any of the churches in the city granting the franchise.

**4. ESTOPPED BY PRACTICAL CONSTRUCTION AND EXPENDITURES.**

Where the construction placed upon a franchise granted to a water works company, stipulating that the company "shall furnish free of charge all the water needed for use in the churches" is construed for a period of seven years, by the waterworks company and by church officials, to include water necessary for a motor to operate a church organ, and on the strength of statements to that effect by the waterworks company to church officials, a church, at considerable expense, put in such a motor, the waterworks company is estopped from afterwards asserting a right to charge for water for that purpose and from refusing to furnish it free of charge.

APPEAL from the Court of Common Pleas of Ashtabula county.

HULL. J.

This case is here on appeal from the judgment of the court of common pleas.

The action is for a mandatory injunction against the defendant, requiring it to turn on the water and supply the plaintiff with water, in accordance with the terms and provisions of a certain ordinance or franchise, under which the plaintiff claims that it is entitled to water free for church purposes, and specially for water to operate an organ motor.

There is no material dispute as to the facts, and it appears from the pleadings, that in the year 1886, a franchise was granted to one Abbott L. Johnson, by the city of Ashtabula, then a village, I believe, authorizing and permitting him to lay the water pipes in the streets of that village and maintain and operate waterworks there.

The defendant, through various transfers and assignments, has become, and before the commencement of this action had become, the owner of this property. The franchise which was granted by way of an ordinance, and is now owned by the defendant, contained divers and

Church v. Water Co.

sundry conditions and limitations, which it is not necessary for us to refer to or mention; but among other things, it contained this provision: "The said grantees shall furnish free of charge, all the water needed for use in the churches; free public schools, and other village buildings belonging to the village; for engine practice; for street sprinkling around village buildings; for the flushing of sewers and gutters; for three public watering places during the non-freezing months in the year, and for three public display fountains, should the village require same. All to be used in a reasonable manner and without unnecessary waste. All fixtures, constructions, etc., necessary for such public buildings, school houses and fountains, to be furnished and maintained at the expense of the village."

It appears from the pleadings and the undisputed facts in the case, that the plaintiff, along in 1860, built a church in Ashtabula, at an expense of about ten thousand dollars. These waterworks were put in at Ashtabula in 1886. In April, 1891, the plaintiff put into its church water pipes, for the purpose of supplying water and running water into the church, to be used in the kitchen and in a sink that there was in the church, and at the same time they ran a pipe to a motor which was used to operate the organ, that pipe running around to the rear of the church, and entering there, and soon after that the water was turned on by the company, and the church used the water for its sink that was constructed in the church and in the kitchen, when they had social gatherings, at the church, festivals and things of that character, and used the water to supply the motor by which the organ was operated, and all this was done free of charge, until about December 28, 1898.

Some time prior to December 28, 1898, a controversy arose between the church and the waterworks company, early in that year the waterworks company claiming that the church was not entitled to have water free for the use of the organ motor. There was no contention between the parties but that they were entitled to water free for the other purposes for which they were using it, and after this controversy the water was turned off once or twice, and in December, 1898, the water was finally turned off wholly and entirely by the waterworks company, by a cut off somewhere near the curb or the street line of the church premises, and it was turned off for the reason that the church insisted upon the right to have the water free for the organ motor. The water company disputed this right, and claiming that there was no way of permitting the water to run on the premises, without it being run into the pipe that went into the organ motor, and the church declining to cut that pipe off, the water company finally cut off the water entirely, so the church was left without any water, and has been since about December 28, 1898. The plaintiff alleges in its petition, that it has no other way of obtaining water for these purposes, and that is admitted by the defendant in its answer, and the defendant in its answer avers that it has no objection, but is ready and willing to furnish water to the church for these other purposes. The only controversy between the parties is as to the use of water for the water motor, and the defendant desires to have this franchise or ordinance construed for the benefit of both parties.

The defendant says further in its answer, that at the time of the execution of the contract mentioned in the petition between the village of Ashtabula and Alfred S. Johnson, his successors and assigns, there

was not in existence in the village of Ashtabula any such thing known or in use in any of its churches or, public buildings as machinery for motors operated by water; that the furnishing of water free to the churches or public buildings for the operation of machinery of any sort was not in the contemplation of the parties, and the defendant avers that under the true and proper construction of said contract, it is not the duty of the defendant, nor is it under any obligation to furnish water free for the purpose of operating any sort of machinery, or for the purpose of furnishing motive power for any purpose, and believing that to be the true construction of the contract it has refused and does refuse to furnish water to the plaintiff free for power purposes.

It further says, that it has at all times been willing, and is willing, to furnish water to said plaintiff, and to the other churches of said city, the water necessary for use therein, other than the operation of machinery, of all of which the plaintiff had and has due notice.

The plaintiff claims, first, that under a proper construction of this franchise, ordinance and contract, it is entitled to have water free for the purpose of running and operating its organ motor.

It claims further, that when the water was put into the church, it was understood and agreed between it and the company that there should be no charge for water for this purpose, and that the church relying upon this put in its pipes and expended the amount of money necessary therefor for the organ motor, and that for seven years no charge was made, and the plaintiff claims that the defendant is estopped thereby from now making a charge against the plaintiff for the use of this water.

In construing and interpreting this contract, we have recourse to the language of the contract itself, and to the conduct of the parties with reference thereto. Where the language of a contract is ambiguous, to any extent, it is proper, as we understand the rule, for a court to consider the interpretation and construction that the parties themselves have placed upon the contract, as evidenced by what they have said or what they have done, and this will involve, to some extent, a brief examination of the evidence that was offered in the case, witnesses having been called before this court and given their testimony.

Now it appears that when this water was put into the church in 1891, Rev. John Brown was then the pastor of the church. Prior to that time there had been no water in the church, and the church concluded it was necessary for their purposes and convenience to have water in the church, and, in order to carry on their meetings and services as they desired, to have a pipe organ in the church.

Mr. Brown applied to Mr. Clark, who was then superintendent of the water company, to have the water put into the church, stated to him he desired to have it put in and called to Mr. Clark's attention the fact that they intended to put this organ motor into the church. Mr. Brown's deposition was taken and this question was asked him:—

Q. You state the conversation that you had with Mr. Clark, relative to this matter at his office; if you cannot give the words give the substance of that conversation. A. The object of my call was to secure permission to use a water motor.

Q. Go on. A. While I cannot remember the detail of the conversation, I remember that the object of my call was to secure permission to use the water motor, and that such permission was granted, with

Church v. Water Co.

the understanding that the churches were entitled to use the water, and, as I remember it, up to this time we had not used any water in the church.

On page six of the deposition, which is in the cross-examination, he is asked this question:—

Q. State the substance of what you said to him. A. In substance I told him that we wanted to put a water motor into the church to run the organ.

Q. State in substance what he said to you. A. He said that we might do so; that the churches were entitled to use the water.

Q. Have you now stated the substance of the entire conversation? A. I have.

Q. When the pipe organ was put in, was it so arranged that the water could be shut off from the organ? A. The water was always shut off from the organ when the organ was at rest.

On re-examination a question was put to him, which perhaps was somewhat leading, but I will read it:—

Q. Among other things, Mr. Brown, you say that Mr. Clark said to you on the occasion mentioned, that the churches were entitled to the use of water; if in the course of that conversation the question of whether it should be free, or be paid for, was understood or not, you may state? A. Permission was given, with the understanding that the water was not to be charged against the church or paid for.

Q. From the time the water was put in, up to the time you left, what say you as to whether any charges were ever made against your church for the use of water, or any bills ever presented for the use thereof? A. There were none.

The evidence shows that for a period of about seven years no charge was made, and no compensation claimed for the use of this water; no charge was entered upon the books of the company, and no mention of any intention to make a charge against the church for the use of this water was made by the company or any of its agents.

Mr. Clark, with whom Mr. Brown had this conversation, who was then superintendent of the waterworks company, was called as a witness by the plaintiff and examined. He testified that at the time Mr. Brown made application to him for the use of this water for the water motor, that he did not make any mention to him of any intention to charge for the use of the water. He says he does not think that he told Mr. Brown that the churches were entitled to have the water free, but he says that he will not deny but that he did so tell him. So Mr. Brown's testimony in that respect stands in reality undenied; Mr. Clark says that at the time he kept concealed from Mr. Brown any intention to make a charge. He says that he, as the superintendent of the company, and the company itself, did intend thereafter to make a charge against the church, for the use of this water; but at that time the city owed the water company several thousand dollars for water, and some controversy had arisen between them, and he had been notified by a superior officer of the company to have no controversy or contention with this church or with the churches, at that particular time, as, to do so would arouse feeling perhaps against the water company, and might interfere with their collecting their claims against the city, and for that reason Mr. Clark testified that he said nothing to Mr. Brown about making any charge for the water; but,

he does not deny that he did say to Brown exactly what Brown claims that he did, and it is undenied that for seven years or thereabouts thereafter, the waterworks company did furnish water for this church for the water motor, and for all purposes, without any charge whatever, and the evidence shows that after this talk between the pastor of the church and Mr. Clark, the church proceeded to put in the water pipes at an expense of about $150, and to connect with the water motor, and to get a water motor for the organ, the expense of which is estimated by one witness at from fifty to seventy-five dollars.

So that as far as the conduct of the parties in this case is concerned, for a period of seven years it would appear that they construed this franchise to mean that the waterworks company was to furnish water free for this church for the use of the organ motor.

This waterworks property seems to have changed hands, and to have been transferred from one company to another, as I notice by the pleadings, and whether this company that became the owner of it in 1897 is practically the same company as its predecessor or not, the evidence does not disclose. It is a different name from the company that owned the property in 1891.

Mr. Hall:   It is not the same company.

Mr. Hoyt:   There is no question made over that

The Court:   No question was made in the trial nor in the argument of the case, nor in the briefs of counsel, but that this has been the same company from 1891 down to the present time, and it will be so treated.

On this question of the conduct of the parties, as an aid in construing the contract, I call attention to Cincinnati v. Gas Light and Coke Co., 53 Ohio St., 278, where the Supreme Court say, in the second paragraph of the syllabus:—"The practical construction placed upon a contract, in the performance thereof, by the parties who made it, should, in case of doubt, have great weight in its construction by courts; but the construction placed upon such contract by the successors of those who made it, or by public officers, is entitled to much less weight."

There was nothing said about it by counsel, but I take it for granted that the franchise was originally granted to Johnson as preliminary to bring transferred to the corporation or assigned to the corporation as is usually done in such cases.

On page 287 of the opinion in Cincinnati v. Gas Light and Coke Co., *supra*, the court say:   "The reason of the rule of practical construction has its origin in the presumption that the parties to the contract, at and after the making thereof, knew what they meant by the words used, and that their acts and conduct in the performance thereof, are consistent with their knowledge and understanding, and that, therefore, their acts and conduct show the sense in which the words were used and understood by them.   In such cases acts sometimes speak louder than words."

This language of the court certainly appeals very strongly to our reason and our common sense; where there is an ambiguity, if there be one in a contract, the parties themselves who made the contract usually know or ought to know with what meaning and purpose they used the language employed, and where they have construed the contract by their words, or by their conduct, certainly courts in construing the contract ought to adopt the same construction, for the purpose of construing or interpreting a contract is to arrive at the meaning and intention of the parties.

Church v. Water Co.

In Proctor v. Snodgrass, 3 Circ. Dec., 268, decided by the circuit court of Hamilton county, the fifth paragraph of the syllabus the court among other things, "Where the meaning of a contract is doubtful, the conduct of the parties thereto with reference to it, throws great light upon their intention in making it, and the interpretation which should be given to it."

And in Kinney, Assignee, v. Commissioners, 4 Circ. Dec., 488, the first paragraph of the syllabus is, "When parties themselves give a construction to a contract of uncertain meaning, courts will give the contract that construction that the parties gave it." On page 450, Judge Swing discussing the question, says, referring to the construction given by the court of common pleas, "Was this construction correct? In our opinion it was not. It is not a contract as it appears to us, free from ambiguity and uncertainty. If this be conceded, we might well rest our decision on the conduct of the parties in regard to the construction that the parties themselves put on the contract. For when parties themselves give a construction to a contract of uncertain meaning, courts will give the contract that construction that the parties gave it."

Now the conduct of these parties, their acts during this period of seven years from the time this water was put in, in 1891, indicates that they understood that this church was entitled to water free, for the purpose of running this motor, together with these other purposes. Using that conduct as an aid in constructing this contract, what does the contract mean? Is there anything in the contract that would overcome the construction that the parties seem to have put upon it by their contract, or to forbid the court putting that construction upon it, to-wit: that the church was entitled to have the water free for this purpose.

The contract says (and I call it a contract, for a franchise is but a contract): "The said grantees shall furnish free of charge all the water needed for use in the churches."

A principle of construction that is well established is, that where language is clear, courts will not endeavor to inject any ambiguity in the contract, or to give any far-fetched construction to it, but will place upon the contract, the interpretation that the plain language used calls for, and will give to each word its ordinary meaning.

On this question of construction, I refer to Lawler v. Burt, 7 Ohio St., 340, and will read from page 350: "The first general maxim of interpretation" says Mr. Vattel, "is, that it is not allowable to interpret what has no need of interperetation. When a deed is worded in clear and precise terms; when its meaning is evident, and tends to no absurd conclusion, there can be no reason for refusing to admit the meaning which such deed naturally presents. To go elsewhere in search of conjectures, in order to restrict or extend it, is but an attempt to evade it."

It is urged, however, that at this time, in 1886, there were no churches in Ashtabula that used water motors for organs—the evidence does not perhaps disclose the fact, but there is no evidence that up to that time there had been any waterworks in Ashtabula, by which such motors might be operated; but in any event, it is claimed that the parties could not have had this in mind, and it should not be held that they had this in mind, in the making of this contract. That by the language "all the water needed for use in the churches," was not meant by the parties to include such a use of water as this is.

It is not disputed but that the church had the right to use water for their sink, to perform whatever duties were necessary in that direction, in the way of washing dishes and things of that character that had been used in the church. It is not disputed, but it is admitted by the defendant here, that they have a right to water free for use in their kitchen for cooking purposes, when necessary for them to carry on anything of that character, at their socials or festivals. It certainly cannot be contended but that a pipe organ is an ordinary thing to have in a church, and it seems to us that this language used includes the right to use the water for such a purpose as is claimed here. The expression is broad; "The said trustees shall furnish free of charge all the water needed for use in the churches."

There is no claim made here by the defense that at this time organ motors were not used in churches in other places although they were not used in Ashtabula, and when Mr. Clark was being cross-examined he was asked this question:—

"Q. Was there then at that time any other church that had a motor? A. No, sir."

On re-examination, however, by Mr. Hoyt he was asked this question:—

"Q. When you spoke of no other churches having motors in, you spoke of churches in Ashtabula city, did you not? A. That was the question." As much as to say, that was the question that was asked him and that he did not intend to answer any further than that, to-wit:— that there was no motor in any church in Ashtabula.

It is a matter of common knowledge that as early as 1886 and before that time, water was used for motive power for a great many purposes. There is no claim made here, as I say, that water was not used for organ motors in different cities around the country at that time, and the answer of Clark would seem to imply that to his knowledge they were used in other places, but at that time were not used in Ashtabula, and if water motors were used in other places at that time, for the purpose of operating organs, it does not seem to us that we ought to hold that these parties did not have such a thing as that in mind at the time this contract was made.

They agreed to furnish water free—"to furnish all the water needed for use in the churches." There are a great many churches without kitchens in them, and it is not a great while since it was very uncommon to have a kitchen in a church. It is comparatively of recent date, I think, from my knowledge of such things, that facilities of that kind were provided in churches as they are at this day. We think it is not puttting a more strained construction upon this contract to hold that this included the use of water for an organ motor, than to hold it included the use of water for a kitchen, for cooking purposes in the church. The testimony is that the organ was necessary in order to carry on the services in a proper manner, and that will not be denied, and that the water was not used in an unreasonable or wasteful manner—in fact the testimony shows that there were not more than three or four barrels of water used a week in running this motor. So that the expense, if that may be taken into account at all, to the company, in supplying this water, would be very slight. Whether there was any other consideration for this contract or franchise, that was awarded this company, than the requirements of the section I have read, the pleadings and evidence

in the case do not disclose. If this was all the consideration that was required by the village, it would not be burdensome upon the company to hold that they should furnish the churches with water free to operate their organs, although it is said there are seventeen churches in Ashtabula at this time; but taking into consideration the conduct of the parties after this contract was made; the way they treated it, both the company and the church, and the fact that water power was used for similar purposes in other cities at that time, we think that we are warranted in the conclusion that under this franchise the church was entitled to have water furnished free for this organ motor; but if we should be wrong about that, and we are pretty clear in our convictions that we are right, we are fully convinced that the water company, by its conduct is estopped from now claiming the right to charge for the use of this water; that there is certainly a clear case of estoppel, if there be a doubt about the contract. The minister of the church goes to the superintendent of the waterworks company, before the motor is put in, and talks with him about it, to get his construction of this contract, and the rights of the church. He submits the question to him, and is told by the superintendent of the company that the church may put in the motor for the organ; that they are entitled to have water for it free, and relying upon that it is put in. The excuse that is now given by the superintendent of the company, for not disclosing the intention to charge, is, that it was kept secret, because they were then in a controversy with the citizens in regard to water ; but that would not prevent such conduct from working an estoppel in favor of the church. If the superintendent purposely withheld this claim on the part of the company for the purpose suggested, and if he expressly agreed with the minister of the church that under this contract they were entitled to have it free, and if relying upon that this expense was entered into in the way of laying pipes and the purchasing of the organ motor, in our judgment after the water had been furnished for seven years free of charge, the company would not be estopped from making any charge, and upon this doctrine of estoppel I cite, Castalia Trout Club Co. v. Castalia Sporting Club, 8 Circ. Dec., 693, a case decided by Judge Seney. The fifth paragraph of the syllabus is:—"When a party, by his failure to speak or act when it is his right so to do, and by silence acquiesces in an act, he will be estopped from claiming that the act should be undone when it will work an injury or damage to the other."

Also Miller v. Brown, 33 Ohio St., 547. The syllabus of that case is:—"An owner of ground, with whose consent an adjacent proprietor occupies a portion of his premises on which to build a joint wall, cannot tear away such wall after a building has been erected thereon, upon the faith of his acquiescence in its location and construction," and the question of estoppel is discussed briefly and to the point on pages 553 and 554 of the opinion.

Also Greenleaf on Evidence, sec. 22. I read part of it:—"Estoppels may be ranked in this class of presumptions. A man is said to be estopped when he has done some act which the policy of the law will not permit him to gainsay or deny."

It seems to us that when the pastor of this church went to the superintendent of the waterworks company, who had full authority to act, under these circumstances, and laid the matter before him and received

this construction of the contract and permission and acted upon it, that the waterworks company has done an act which as Greenleaf says, "The policy of the law will not permit it afterwards to gainsay or deny;" that the law will not permit the company now to say that it had the right to charge for this water, and intended to charge for it all the time.

I also cite Greenleaf, Vol. 1, sec. 207: "Admissions whether of law or of fact, which have been acted upon by others, are conclusive against the party making them in all cases, between him and the persons whose conduct he has thus influenced. It is of no importance whether they were made in express language to the person himself, or implied from the open and general conduct of the party. For in the latter case, the implied declaration may be considered as addressed to every one in particular who may have occasion to act upon it. In such cases the party is estopped on grounds of public policy, and good faith, from repudiating his own representations."

Our conclusions then in this case are:—

1: That the contention of the plaintiff is correct, as to the proper construction of this contract.

2: That the defendant, by its conduct, is now estopped from asking to have the construction put upon it which it seeks here, and is estopped from charging the church for the use of this water.

A decree will be entered in favor of the plaintiff.